JAMES W. KLIPSTINE, JR., AND LaTANNIA J. KLIPSTINE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Klipstine v. Commissioner
Docket No. 2088-90
United States Tax Court
T.C. Memo 1991-580; 1991 Tax Ct. Memo LEXIS 628; 62 T.C.M. (CCH) 1313; T.C.M. (RIA) 91580; November 26, 1991, Filed *628 Decision will be entered under Rule 155. David Leeper, for the petitioners. Derek B. Matta, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies of $ 2,290 and $ 16,087 in petitioners' Federal income taxes for 1984 and 1985, respectively. Respondent also determined additions to tax under sections 6651(a)(1) and 6653(a)(1) and (2) for 1984 and under sections 6653(a)(1) and (2) and 6661 for 1985. All section references are to the Internal Revenue Code as in effect for the years in issue, and all Rules references are to the Tax Court Rules of Practice and Procedure. After concessions, the issues for decision are whether petitioners are entitled to a bad debt deduction in the amount of $ 83,718 in 1985 and whether they are liable for the additions to tax determined by respondent. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. During the years in issue, James W. Klipstine, Jr., was a practicing attorney, and LaTannia J. Klipstine was engaged in the business of factoring. Petitioners resided in New Mexico at the time their *629 petition was filed. Field Services, Inc. (the corporation), was incorporated in October 1979. Mr. Klipstine acquired the stock of the corporation at a cost of $ 500 and spent $ 10,000 to purchase vehicles and tools to be used in the oil field service business. Frances Pembrook, Mrs. Klipstine's brother, was the first president of the corporation. Mrs. Klipstine was initially the secretary of the corporation but became president of the corporation in early 1983. In February 1983, the corporation filed a petition under chapter 11 of the Bankruptcy Code. The bankruptcy proceeding was converted to a chapter 7 proceeding in 1985. Mr. Klipstine's purpose in incorporating the oil field service business was to facilitate the negotiation of loans between himself and the corporation. Mr. Pembrook understood that such loans would be carried at zero-percent interest and could be paid back when the corporation could afford to do so. The only documents maintained by petitioners in relation to funds advanced by them to the corporation were four undated promissory notes in the amounts of $ 2,000, $ 5,000, $ 9,000, and $ 14,400, and an undated "loan agreement," signed by Mrs. Klipstine as *630 president of the corporation, stating, in part: it is agreed that the money advanced by the Klipstines from time to time, as needed by Field Services Company, Inc. shall be treated as a loan, to bear interest at the rate of 10% per annum until paid.
Repayment of these funds advanced shall be on demand. Petitioners' Federal income tax return for 1984 was filed on or about March 14, 1986. That return failed to report several items of taxable income received by petitioners during 1984 or to report self-employment tax of $ 2,290 due from petitioners for 1984. On Schedule C attached to their 1985 tax return, petitioners showed a net loss of $ 83,718.57, allegedly resulting from a proprietorship of Mr. Klipstine in the business of "Other financial Activities" under the name James W. Klipstine, Jr., Llana Estacado Investments. There is no indication on the return that the amount claimed was a bad debt relating to moneys owed by the corporation to petitioners. Petitioners are liable for self-employment tax of $ 4,673 for 1985, which they failed to report on their income tax return for that year. OPINION Petitioners have the burden of proving that respondent's determinations *631 are erroneous. Rule 142(a). With respect to the claimed bad debt loss, the parties agree that the relevant factors are set forth in , as follows: The criteria to be considered in determining questions such as this case poses have been thus stated: "There are at least eleven separate determining factors generally used by the courts in determining whether amounts advanced to a corporation constitute equity capital or indebtedness. They are (1) the names given to the certificates evidencing the indebtedness; (2) the presence or absence of a maturity date; (3) the source of the payments; (4) the right to enforce the payment of principal and interest; (5) participation in management; (6) a status equal to or inferior to that of regular corporate creditors; (7) the intent of the parties; (8) 'thin' or adequate capitalization; (9) identity of interest between creditor and stockholder; (10) payment of interest only out of 'dividend' money; (11) the ability of the corporation to obtain loans from outside lending institutions." . *632 See Mertens Federal Income Taxation sec. 26.10c.
This Circuit has rejected the notion that thin capitalization alone will justify the Commissioner in designating an indebtedness as capital, but recognizes that this factor need not be ignored in determining whether all of the facts authorize the inference of an intent to make a contribution to capital. . Evidence which may tend to prove that a transaction was a contribution to capital may be of many sorts. ; . No comprehensive rule can be stated which will be applicable in all cases. .
Petitioners' evidence in this case can only be characterized as flimsy and unpersuasive. Despite the requirement of the Court's Standing Pre-Trial Order that documents be exchanged and an explicit Order for production of documents relating to the bad debt issue, petitioners produced only five undated documents purportedly reflecting *633 loans. Four of those documents were promissory notes in the total amount of $ 30,400, although petitioners claim to have loaned a total of $ 124,218 to the corporation. Claimed repayments of $ 40,500 were not related to any particular loans. On two of the promissory notes, the specified interest appeared to have been changed from "0%" to " 10%." The other two specified interest of 21 percent and 16 percent. All four promissory notes were signed by Pembrook, who testified that his understanding was as follows: My understanding of all of these notes was that they would be carried at zero percent interest, which I thought was a pretty good deal, and that they would be paid back at a time when the corporation could afford to be the lender [sic].
Mr. Klipstine testified that his purpose in incorporating was "to facilitate the negotiations of loans between myself and the corporation," from which we infer that he believed there would be tax advantages to treating advances to the corporation as loans with repayments rather than capital contributions and dividend distributions. Overall, petitioners' evidence fails to establish that the advances were bona fide loans upon application *634 of any of the above-mentioned relevant factors. See also ; ; . In a post-trial brief, petitioners assert that they might be entitled to a loss under section 1222 or section 1244. Petitioners failed to comply with the requirement of the Court's Standing Pre-Trial Order that they file a trial memorandum prior to trial or with an order that they answer interrogatories relating to their claim. The alternative claims raised after trial were never mentioned prior to or during trial, and there is no evidence that the stock of the corporation was issued under section 1244 or of the actual basis of petitioners in the stock. Petitioners are not entitled, on this record, now to change their theory of the deduction and, in any event, they have not presented evidence sufficient to show that they are entitled to a deduction on any alternative theory. Petitioners have presented no evidence or argument with respect to their failure to file their 1984 return on *635 time or to report all of their income and social security tax liability on that return. Thus they are liable for the additions to tax under section 6651(a)(1) and section 6653(a)(1) and (2) for that year. Petitioners assert that they should not be subject to the additions to tax under section 6653(a) for negligence or under section 6661 for a substantial understatement of income tax with respect to the bad debt issue. In view of the total inadequacy of their evidence on this issue, however, we are unpersuaded that they should be relieved of liability for those additions to tax. Petitioners have offered no explanation as to why they were not negligent in failing to report self-employment tax for 1985, which they have now stipulated is owing. Specifically with respect to section 6661, petitioners contend that they fully disclosed the position taken on their return and had substantial authority for that position. See sec. 6661(b)(2)(B). Their return did not, however, disclose that the $ 83,718 deduction was claimed as a bad debt or that it arose from a transaction between petitioners and their corporation. The reasons for disallowing petitioners' claimed bad debt deduction also *636 are reasons why other cases allowing such deductions are materially distinguishable and are not substantial authority for petitioners' position. See , affd. . To account for concessions set forth in the stipulation, Decision will be entered under Rule 155.